The Chancellor
observed that if time was not material under the covenant between Medcef Eden the elder and D, Halsey, and the covenant was in force when the former died, so that a specific performance could be decreed, upon which question he expressed no opinion, then Medcef Eden the younger had the mere legal title when he died, and the $750 was the whole value of his interest in the premises, and much more. That if this question was one of doubt, and the executrix sold for what the title was believed to be worth, subject to the risk of the litigation which might ensue as to its nature, and the power was executed in good faith and without fraud, the plaintiffs below could not recover upon the ground that the sale was for less than the value of a perfect title. And that if by a mistake of law on the part of the executrix and her grantee, a sale was made under the power for less than the true value of the title, this was no fraud; and if the plaintiffs below have any relief, which is at least doubtful, it must be in equity for the deficiency in value.
Bockee, Senator.
The principal question arising in this'
case, and on which its decision must depend, relates to the due execution of the power contained in the will of Medcef Eden the younger. If that power was duly executed, then both the legal and equitable estate were united in the plaintiff in error, who was the defendant below, apd her title is perfect.
■ It must be conceded that the power given in the will is a naked power, and as such must be strictly pursued. This is a sound principle of law, supported by numerous and uncontradicted authorities. If the release given by Rachel Eden and Aaron Burr to Renwick, as the trustee of Mary C. P. McComb, is not in strict conformity with the power, it is unauthorized and void.
The power is executed with a strict regard to all the forms *337 and circumstances prescribed by the instrument creating it. Technically and formally the release is certainly a valid execution of the power. But it is objected that it does not conform to the spirit of the will, and the intent of the testator; that the pecuniary consideration was grossly inadequate and clear evidence of fraud; that the equitable claims of Alexander McComb were in part the consideration of the deed; that it was not given for a pecuniary consideration equivalent to the whole value of the estate; and that it was therefore unauthorized and void.
The recitals in the release being admitted as facts proved on the trial, the plaintiff in error had an equitable estate in the premises, having paid the full consideration therefor to the elder Eden of his representatives. The money was paid to Joseph Eden, who was the executor of his father, and the devisee of the premises in controversy. Joseph Eden, on the receipt of the consideration money stipulated to be paid in and by the articles of agreement between his father and Daniel Halsey, in May, 1799, executed a deed of the premises to Alexander McComb. It was doubtless believed that by this deed a good and perfect title was acquired. But it appears that on the death of Joseph Eden, without issue, the brother Medcef took the legal estate by virtue of the executory devise in the will of Medcef Eden the elder. This was taken, however, subject to all the equitable interest held under and derived from the devisor. The plaintiff in error held the equitable estate under articles of agreement for title with Medcef Eden the elder, which were fully performed on her part. Equity would have decreed against Medcef Eden the younger a conveyance to the plaintiff in error of the naked legal title which he held. His title, whatever it was, lay dormant from the death of Joseph in 1813, to 1826, when Rachel Eden, acting under the power given in his will, and with the approval and consent of Aaron Burr, in whom the testator appears to have placed confidence, conveyed all the estate which the testator had in the premises, for the consideration of $750.
There is no pretence for saying that this consideration was *338 more than an equivalent for the naked legal title which the testator held. Nor can it be objected to the valid execution of the power that the consideration of the deed did not comprise the whole pecuniary value of the premises, when the. whole beneficial interest, and all that constitutes value, was owned by others. If this power was intended to operate upon the estate which the testator held in the premises, (and it could operate upon nothing else,) it is well executed. This is a plain matter which a plain man who has never read a law book can decide as promptly and as correctly as the lord chancellor of England. The plaintiff in error chose to perfect her title by advancing this money and receiving a conveyance from the executors, rather than incur the expenses and delays incident to proceedings in chancery. So far from operating injuriously to the 1 devisees of Medeef Eden the younger, the sale gives to them §750 for a title which was of no value, and which they might have been compelled to convey without any consideration. There is no sacrifice of their rights, and no fraud contemplated or perpetrated against them. They never had any equitable interest, and the mere legal title was legally conveyed for an ample pecuniary consideration; under the power contained in the will, and in perfect fairness and conformity with its provisions. The remark of the learned judge in his decision of this cause in January term, 1841, (1 Hill, 111,) that the rights of the devisees would be sacrificed by merely surmising some equitable consideration, by way of recital, and that the attempt to establish such a consideration was not made on the trial, independently of the recitals, is not applicable to the present case. The mischiefs apprehended by the learned judge would not. ensue, for in this case the recitals in the deed are admitted as facts proved on the trial.
The claim of the plaintiffs below has not the shadow of justice, nor even the beauties of technicality in its favor. The decision of the supreme court must be reversed.
Wright, Senator.
The plaintiffs below established a title to one moiety of the premises in dispute, in right of the wife of *339 Waldron as devisee in remainder under the will of Medcef Eden Jun.; and they are entitled to the land recovered unless the deed from Rachel Eden and Aaron Burr, given in 1826, to James ¡Ren wick, as trustee for Mary C. P. McComb, the plaintiff in error, is sufficient in law to pass the estate which Medcef Eden Jun. had in the premises at the time of .his death.
Medcef Eden Jun., by his will dated the 23d day of July, 1819, devised to his wife for life all his real and personal estate, for the support and maintenance of her three daughters, and his friend John Pelletreau; and after the death or re-marriage of his wife and the death of Pelletreau, he devised his estate to the three daughters of his wife in fee, Sally Ann, the wife of Waldron, being one of the daughters. He then gave to his wife, so long as she remained unmarried, full power and authority to sell and convey all or any part of his real estate, providing that Aaron Burr "should in writing, signed with his hand, approve of and consent to such sale.
The deed from Rachel Eden and Aaron Burr to Ren wick was executed under and in pursuance of the power thus given in the will of Medcef Eden Jun.; and it is assailed by the devisee, the wife of Waldron, as inoperative and void, because, being executed under the power thus given in the will, it was not made in pursuance thereof, but in manifest violation of the intention of the testator, and of the trust reposed irj the donees of the power under his will.
It is conceded in the opinion of the supreme court, and was not denied upon the argument, that every formal requisite to the' due and proper execution of the power has been complied with. The deed is executed by the proper parties, and contains apt words to convey the estate which Medcef Eden Jun. had in the lands in controversy. But it is attacked upon two grounds, viz. 1st. That it is not founded solely upon a pecuniary consideration, or its equivalent; and 2d, That the consideration accepted by the grantors is grossly inadequate.
The case of Anderson v. Jackson, (16 Johns. Rep. 382,) decides that the legal, estate in the premises in question became vested in Medcef Eden Jup., upon the death of his brother *340 Joseph without issue; and the principal and important question in this case is, what was the character and extent of the legal estate which Medcef Eden Jun. thus acquired in the land ill controversy ? Was. it a full, perfect, legal and equitable estate, discharged from all the rights which Alexander McComb had acquired in virtue of his interest in the contract made by Medcef Eden the elder with Daniel Halsey, on the 1st day of April, 1789, and the payment to Joseph Eden of the one thousand pounds and interest thereon, under and in pursuance of that contract? Or was the estate which Medcef Eden Jun. thus obtained under the devise from his father a mere nailed legal estate, charged with the equitable title acquired by McComb in virtue of the contract with' Halsey ?
The recitals in the deed from Rachel Eden and Aaron Burr show, (and these recitals are admitted by the bill of exceptions to be true,) that the elder Eden made a written contract with Daniel Halsey, on the 1st of April, 1789, to convey the lands in question to him, upon payment to him of the sum of one thousand pounds and interest, in one payment, at the end of eight years; that McComb, by assignment, acquired all the rights which Halsey had under this contract; and that after the death of the elder Eden, he paid to Joseph Eden, the devisee of the premises, and who was also executor of his father’s will, this sum of one thousand pounds, and the interest which had accrued thereon, which payment was made and the money received by Joseph in execution of the contract made by his father in 1789 with Daniel Halsey.
Most clearly the payment of this money to the elder Eden would in equity have entitled McComb to a deed; and the payment to his devisee and executor, in execution of the same contract, would give McComb an equitable interest in the premises, which would follow the estate and be a charge upon it in the hands of any person having notice.
But it was insisted on the argument that this contract made by the elder Eden with Daniel Halsey was without mutuality, and did not contain any covenant or agreement on the part of Halsey to pay : and further, .that it was not performed by him *341 until after the expiration of the eight years limited for the payment of the money; that Joseph Eden was not in equity bound to carry it into effect with McComb; and that he (Joseph) could not, by accepting” the money under the contract, charge the estate with any equitable interest or right in McComb.
Conceding that this contract could not have been enforced against Halsey for want of mutuality, (which I by no means admit,) and that the elder Eden was not bound to accept the money after the eight years had expired; still Joseph Eden, upon his father’s death, took the estate as devisee, and in that character, and as the executor of his father’s will, he and he alone had the right, if it existed, to raise the objection to the performance of the contract. The land was his, subject to the rights which his brother Medcef might acquire on the death of Joseph without issue. He, as such devisee and executor, could waive all objections as to the time of performance or otherwise. He assumed to execute the contract, and received from McComb the one thousand pounds and interest, in pursuance of the conditions imposed by the contract upon Halsey. It was paid by McComb as assignee of Halsey, in execution of the contract, and to the only person who had the legal right to accept or reject it. McComb, at the time this payment was made to Joseph Eden, was in actual possession of the land under his assignment from Halsey, and he and his devisees or heirs have remained in possession up to this time. It is submitted with great confidence, that this payment was sufficient to vest in McComb an equitable title to these premises as against all who claim under the elder Eden or his devisees! ■
McComb having thus acquired the equitable estate in the land, Medcef Eden Jun., upon the death of his brother Joseph without issue, took the legal estate, charged and subject to this outstanding equitable title in McComb; an estate which in equity was valueless. When therefore the persons authorized by his will to sell his real estate came to execute a conveyance of the lands in controversy to Renwick for the benefit of Mrs. McComb, they were careful to set forth in the recitals of the deed the exact condition of the title and the interest which *342 they were authorized to convey in execution of the trust reposed in them. This conveyance .was made too, it will be perceived, under the advice and direction of Col. Burr, one of the best real estate lawyers of his, day. And after showing, by a full history of the title, that Medcef Eden Jun. had not an absolute, legal and equitable estate, the conveyance specifies such a consideration in money for this naked legal estate as would be a just equivalent for the interest then vested in -the devisees of Medcef Eden Jun., taking into the account the one thousand pounds and interest paid to Joseph Eden in 1789; this being deemed at that time a full, fair and just price for the land. *
I insist then that upon the face of the deed from Rachel Eden and Aaron Burr to Renwick, it appears that the donees of this "power given by the will of Medcef Eden Jun., received a pecuniary consideration for the interest which they conveyed, and no other consideration, They have not, in the language ■of the learned judge who delivered the opinion of the court below in this cause, bound the estate by recitals, or attempted to do so. The recitals are admitted in the bill of exceptions to be true, and they are therefore' not to be considered as mere assumptions of the grantors; but are put forth as an admitted and true statement of the facts relating to the character and extent of the title which their donor had in the premises.
I do not intend to controvert the position taken upon the argument, that a power like the one in question must be strictly pursued by the donees thereof, and that any substantial departure from a strict execution will avoid the-conveyance under it; but I place my opinion distinctly upon the ground that the deed in question, taken all together, shows a strict and perfect execution of the power, in conveying such an estate only as the donor had the right to devise, or which he authorized the donees to sell, viz. the naked legal estate.
The case of Franklin v. Osgood, (14 Johns. Rep. 527,) is in many respects similar to the one under consideration. In that case a power, very much like the power in the will of Medcef Eden Jun., was given to executors to sell real estate; and they, *343 finding the title of their donor resisted and embarrassed by apparent equities and outstanding claims, conveyed property which was alleged to be worth one hundred thousand dollars, for twenty-five thousand. Yet their conveyance was sustained by this court, on the ground that it was made in good faith, with intent to carry out the intention of the donor, and that the executors were justified.in the exercise of a fair discretion in disposing of lands thus encumbered and embarrassed. The conveyance in that case was assailed, as the one in question is, because the consideration received was not the then cash value of the land, without reference to the outstanding equities against the title of the real owners. But the court held it good, if nothing was shown to fix upon the donees of the power ariy thing like fraud or unfairness. In my opinion that case is a full authority to support the conveyance from Mrs. Eden and Col. Burr to the plaintiff in error; and in this view it is unnecessary to examine the other question raised Upon the argument, viz. whether mere inadequacy of consideration is at law sufficient to avoid a' deed. The consideration received in this case—seven hundred and fifty dollars—was conceded to be a full equivalent for the title of Medcef Eden Jun., provided it was, what I believe it to have been, a mere naked legal estate, the equitable title being in McComb.
I am of opinion that the judgment of the court below is erroneous, and that it should be reversed.
Porter, Senator.
Both parties in this case derive their title under the will of Medcef Eden the elder; and the defendant below attempted to show that she, or those through whom she more immediately derived title, had some equitable right to the premises in question. I do not see how such considerations can be received in a court of law to defeat a legal title. Any relief that she may be entitled to in that respect must be sought in a court of equity. The important question, and the one upon which, as it appears to me, this case must turn, arises upon the effect to be given to the deed from Rachel Eden and Aaron Burr, to James Renwick, *344 dated in 1826. That deed contains many recitals showing, as is alleged, the history of the claims to the premises in question'; and it may be considered as purporting to be a deed for confirmation of a doubtful title, before that time claimed to have been in Alexander McComb, and which had then become vested in the defendant below.
The plaintiffs below traced their title through Medcef Eden Jun., and no reasonable doubt exists that the title, and the whole title, so far as concerns this suit, was in him at his 'death in 1819. By his will, dated July 23d, 1819, he devised these premises to his wife for life; and he expressly stated in his will that he did so for the purpose of maintaining and supporting her, her three daughters, and his friend Pelletreau. And after the death of his wife and Pelletreau, he gave and devised the premises to the three daughters by name, and to their heirs and assigns forever. He then gave his wife power to sell and convey the premises, with' the consent of Aaron Burr in writing, and added this clause: “ The money arising from all such sales to be vested and secured in such manner as the said' Aaron Burr shall direct, for the purposes of this my last will.”
It is a fact worth remarking that although in the recitals in the deed to Renwick it is stated that Medcef Eden Jun. made a will, devising his real estate to his wife for life, “ with certain remainders over,” and gave her full power to sell and convey any of his real estate with the consent of Burr, yet there is an entire omission to notice the directions given respecting the investment of the proceeds.
Under the power of sale contained in this will, Rachel Eden conveyed the premises to Renwick for the consideration of $750, while they are proved to have been worth at that time $10,000. The power conferred upon Mrs. Eden was a naked power: and if it has not been executed by her, according to the spirit of the will that conferred it; if the rights of those in remainder, which were entrusted to her care, have been disregarded in this conveyance, then it is void.
In the celebrated case of Taylor ex dem Atkins v. Horde, *345 (1 Burr. 120,) Lord Mansfield says : “ The intent of parties who gave the power ought to govern every construction. He to whom it is given has a right to enjoy the full exercise of it ; they over whose estate it is given have a right to say ‘ it shall not be exceeded.’ The conditions shall not be evaded; it shall be strictly pursued, in form and substance. And all acts done under a special authority, not agreeable thereto, nor warranted thereby, must be void.”
That these principles are applicable to the present case must be admitted. The will shows that the testator designed this property should belong, after the termination of the life estates mentioned, to the daughters of his wifewhom he probably considered in the same light as his own children. All his interest in and title to the property he meant should enure to their benefit; for he gave it to them and to their heirs and assigns forever. We find no expressions in the will that give color to any other interpretation of his meaning. And he directs the proceeds of the sale to be vested and secured for the purposes of his will. That purpose had been explicitly declared before, when he gave the property in fee to the daughters.
What then was the intent of the donor of the power 1 It certainly cannot be said he contemplated that this power would be exercised to satisfy any equitable claims which might arise under the mistaken acts of his brother Joseph at a time when he supposed he was the owner of these premises ; or to confirm any title thereto derived from Joseph. The condition upon which the power was conferred was, that those for whose benefit the testator had devised the estate should possess and enjoy the whole proceeds of a fair and honest sale. This condition has been evaded. If the donee of the power could lawfully sell these premises, worth $10,000, for $750, why could she not have sold them for $50, or any less sum 1 If to carry out the purposes of the will it was necessary to invest the true value of these premises for the use of the daughters in fee, as appears to me very obvious, then the sale to Ren wick was a perversion of the power; an attempt to sacrifice the interests of the devisees in *346 remainder, and therefore, in the language of Lord Mansfield, “ not agreeable to the power, nor warranted thereby.”
It is quite fair to assume, from the consideration expressed in the deed, and from the recitals, that other interests than those of the devisees in remainder influenced Mrs. Eden, and induced her to execute the deed. Believing this, I must come to the conclusion that in a court of law the deed is void; apd there-i fore that the judgment of the supreme court is correct, and should, be affirmed.
On the question being put, “Shall this judgment be reversed?” the members of the court voted as follows:
Far reversal: The Ppesipent, The Chancellor, and Senators Bartlit, Bockee, Denniston, Deyo, Ely, Franklin, Hopkins, Lott, Mitchell, Platt, Putnam, Rhoades, Scott, Sherwood,. Tarney and Wright—18.
For affirmance: Senator Porter.
Judgment reversed.